The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 *********** RULINGS ON EVIDENTIARY MATTERS
In plaintiff's brief to the Full Commission, plaintiff made several motions to reopen the record to take additional evidence, including motions to take additional depositions, subpoena *Page 2 
audio tapes, take additional testimony before the Full Commission, have an independent medical examination, impose penalties on one of defendants' witnesses, and compensate plaintiff for her appeal to the Full Commission. Defendants objected to plaintiff's motions and the Commission hereby DENIES plaintiff's pending motions.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to mis-joinder or non-joinder of parties.
4. Plaintiff alleges she sustained a compensable injury on January 19, 2007 (I.C. No. 705778) and March 6, 2007 (I.C. No. 753864).
5. Plaintiff's average weekly wage with respect to her claim of injury by accident on January 19, 2007, is $463.96.
6. The average weekly wage for plaintiff's claim of injury by accident on March 6, 2007, is $437.78.
7. An employment relationship existed between plaintiff and defendant-employer during the relevant time periods. *Page 3 
8. The following were admitted into the record at the Deputy Commissioner's hearing: Stipulations 1-4, plaintiff's exhibits 1-8 and 10-17, and defendants' exhibits 1-3.
9. The issues before the Full Commission are whether plaintiff suffered a compensable injury by accident to her right wrist on January 19, 2007, and if so, what benefits is she entitled to receive; and whether plaintiff suffered a compensable injury by accident to her head on March 6, 2007, and if so, what benefits is she entitled to receive.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on October 17, 1956. She attended one year of college and has obtained numerous certificates.
2. At the time of the Deputy Commissioner's hearing, plaintiff was employed by defendant-employer as a package handler in Rocky Mount, North Carolina. Plaintiff worked for defendant-employer for more than 32 years, during which time she worked in numerous jobs, including data entry, clerical, loading, unloading, and design.
3. Plaintiff's medical history pre-dating her claims includes metastatic breast cancer and a brain tumor. Plaintiff's received treatment for breast cancer from Dr. Francisco Castillos and treatment for her brain tumor from Dr. Henry Brem of Johns Hopkins.
4. As a package handler for defendant-employer, plaintiff worked inside a trailer. She removed packages of varying weights and sizes from a conveyor belt and placed them on top of other packages, from floor to ceiling, inside the trailer. To be able to place packages *Page 4 
appropriately all the way to the ceiling of the trailer, shorter package handlers used movable steps.
5. The speed at which a package handler's job duties are performed varies from slow to hectic. Defendant-employer developed the trade term "blow-out" to describe a circumstance where the pace of packages coming into the trailer is in excess of the speed at which the package handler can remove the boxes from the conveyor belt and place them properly. Blow-outs occur on a frequent basis and are considered part of a package handler's normal work routine.
6. Package handlers are supposed to receive immediate assistance at times when their trailer becomes "blown-out." However, package handlers sometimes fail to receive immediate assistance when requested, and working a blow-out without immediate assistance is considered part of a package handler's normal work routine.
7. At some point during plaintiff's shift on January 19, 2007, she experienced a "blow out" in her trailer. Plaintiff requested assistance from her supervisor, but did not immediately receive it. A co-worker was asked to assist plaintiff, but cursed at her and refused to help. While standing on a set of steps trying to place a package weighing approximately 15 pounds into a slot above her head on top of a wall of packages, plaintiff felt a pain in her hand. Plaintiff filed a claim for this injury under I.C. File No. 705778.
8. Plaintiff testified that it was not unusual to experience a blow-out in her trailer, to ask for assistance and not receive it, to lift and place packages of similar weight and size over her head on top of a package wall and to use steps to help reach the top of package walls.
9. Plaintiff completed the remainder of her shift on January 19, 2007. Plaintiff was out of work on January 22 and January 23, 2007. She returned to light duty work on January 24, 2007, and worked in that capacity through February 16, 2007. Plaintiff was on paid vacation for *Page 5 
at least part of the time from February 19, 2007 through March 2, 2007 and returned to full duty work on March 5, 2007.
10. Plaintiff received treatment for her wrist injury from Dr. Guy Maclang, who released her to return to full duty work on February 23, 2007.
11. Based on the greater weight of the evidence, the Commission finds that plaintiff was performing her normal job duties and did not sustain an injury by accident on January 19, 2007 (I.C. No. 705778).
12. On March 6, 2007, a large package became lodged on the conveyor belt leading into plaintiff's trailer. Plaintiff left her trailer and requested assistance from her supervisor. Her supervisor asked that she wait for one minute, as he was assisting another employee whose trailer had become backed up. Plaintiff testified that while outside her trailer, a box weighing approximately 15 pounds fell off the rollers above her and struck her on the top of her head, forcing her into a cinderblock wall. Plaintiff filed a claim arising out of the injury under I.C. File No. 753864.
13. Also on March 6, 2007, Justin Reams, plaintiff's co-worker, was working the Raleigh trailer in the area near plaintiff. At the time of the incident, Mr. Reams was outside his trailer picking up packages, as the flow of packages into this trailer ceased due to the other employee's back up. Mr. Reams observed plaintiff from the time plaintiff asked her supervisor for help until the time plaintiff placed her hands onto her head. Mr. Reams testified that this took one minute and that he watched plaintiff during this period without interruption or obstruction. He stated that there was no possibility that plaintiff was struck in the head by a package as alleged. Although conflicting evidence has been offered, the Commission finds plaintiff credible *Page 6 
and gives greater weight to her testimony than to Mr. Reams. Therefore, the Commission finds that plaintiff was struck on the head by a package on March 6, 2007.
14. Plaintiff reported the incident to her supervisor, Anitra Hurley. Plaintiff completed her shift on March 6, 2007 and worked a full shift on March 7, 2007. Plaintiff was out of work for unspecified personal reasons on March 8, 2007.
15. On March 9, 2007, plaintiff contacted defendant-employer and reported that she had been diagnosed with a concussion by a physician at Johns Hopkins.
16. Defendant-employer referred plaintiff to Nash Urgent Care on March 9, 2007, where she was treated by Dr. Michael J. Feasel. Plaintiff's physical examination was normal, with the exception of slight pain to palpation over the posterior aspect of the neck. Dr. Feasel observed no visual evidence of any impact injury to the head. Dr. Feasel removed plaintiff from work for complaints of blurred vision until March 12, 2007, although he found no objective evidence to support this complaint.
17. Dr. Feasel's findings on physical examination were reviewed by his medical partner, Dr. Matthew Mullen. In Dr. Mullen's opinion, physical findings limited to slight pain without sign of soft tissue swelling or blunt force trauma do not support plaintiff's contention that she was struck in the head by a 15 pound box three days prior to examination.
18. Also on March 9, 2007, plaintiff telephoned Dr. Francisco Castillos, her primary care physician for management of her metastatic breast cancer. Plaintiff requested to be removed from work. Dr. Castillos agreed, pending physical examination.
19. On March 12, 2007, Dr. Castillos examined plaintiff. Finding that her complaints were unrelated to her metastatic breast cancer, Dr. Castillos referred plaintiff back to Dr. Feasel. Dr. Castillos did not offer any opinions regarding plaintiff's ability to work at that time and *Page 7 
deferred to Dr. Feasel. Even so, Dr. Castillos removed plaintiff from work through March 23, 2007.
20. On March 13, 2007, plaintiff contacted defendant-employer and reported that she would not be coming into work on that date or until the status of her injury was resolved. Plaintiff did not contact defendant-employer at all on March 14, 15 or 16, 2007. On March 16, 2007, plaintiff was given a one-day suspension for poor attendance, followed by an Article 48 discharge for failure to report to work for three consecutive days.
21. On March 21, 2007, plaintiff presented to Dr. Mullen with complaints of cervical and thoracic pain. Physical examination revealed minimal tenderness to palpation and slight soft tissue swelling over T1. Following the examination, Dr. Mullen removed plaintiff from work through March 23, 2007, followed by a 15 day period of light duty work.
22. On April 5, 2007, plaintiff returned to Dr. Feasel. Dr. Feasel ordered a cervical MRI to evaluate the findings of a March 22, 2007 cervical spine x-ray, which revealed a tiny bone density anterior and inferior to the 6th cervical vertebra. Pending the MRI, Dr. Feasel assigned plaintiff light duty work restrictions. Plaintiff did not return to Dr. Feasel after April 5, 2007.
23. At his deposition, Dr. Feasel reviewed the results of the April 19, 2007 cervical MRI. The MRI revealed shallow disc bulging at C3-4 and C5-6, without any significant cord or neural foramina compression and a possible atypical hemangioma at C7. In Dr. Feasel's opinion, the study revealed "no evidence of acute trauma" and did not necessitate any continued work restrictions.
24. On April 19, 2007 and June 19, 2007, plaintiff returned to Dr. Castillos for monitoring of plaintiff's metastatic breast cancer. While Dr. Castillos continued to hold plaintiff *Page 8 
out of work, he testified at his deposition that he reached no conclusion regarding plaintiff's ability to work on either date and that he defered to Dr. Feasel regarding this matter.
25. At his deposition, Dr. Castillos reviewed the results of a March 28, 2007 brain MRI. Dr. Castillos observed no change in a brain meningioma that pre-existed both incidents at issue. Dr. Castillos further reviewed the March 22, 2007 cervical CT scan and the April 19, 2007 cervical MRI. Dr. Castillos testified that he was unable to opine as to the causal relationship, if any, between the March 6, 2007 incident and the abnormal cervical studies.
26. In order to return to work, defendant-employer wanted plaintiff to be released to full duty work by their doctor. On July 17, 2007, plaintiff saw defendant-employer's physician, Dr. Michael Landoff at Concentra Medical Center. Dr. Landoff released plaintiff to return to full duty work with no restrictions as of July 18, 2007.
27. Effective July 18, 2007, plaintiff's job with defendant-employer was reinstated following union hearings and her time missed from work following termination, from March 16, 2007 to July 18, 2007, was re-characterized as suspension without pay. Plaintiff returned to work on July 18, 2007 and has continued to work for defendant-employer without any complaints or medical treatment related to the incidents at issue.
28. Based on the greater weight of the evidence, the Commission finds that plaintiff sustained an injury by accident to her head on March 6, 2007 and, as a result, was temporarily totally disabled from any employment from March 16, 2007 until July 18, 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 9 
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v.Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). An "accident" is an unlooked for and untoward event that was not expected or designed by the injured employee and the result of which was produced by a fortuitous cause. Harding v. Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109
(1962). Plaintiff must carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and the disability for which compensation is sought. Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
3. On January 19, 2007, plaintiff performed her job within her normal work routine. She performed her customary duties in the usual way and there was no unlooked for or untoward event that would constitute an "accident" under the Act. N.C. Gen. Stat. § 97-2(6); Harding v. Thomas Howard Co., supra; Click v. Freight Carriers, supra. Therefore, plaintiff did not sustain a compensable injury by accident on January 19, 2007.
4. However, on March 6, 2007, plaintiff did prove that she suffered a compensable injury by accident, when a package hit her on the head, arising out of and in the course of her employment with defendant-employer N.C. Gen. Stat. § 97-2(6).
5. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment *Page 10 
and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of pre-existing conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
6. In this case, as a result of her injury by accident on March 6, 2007, plaintiff was taken completely out of work or restricted to light-duty work from March 16, 2007 until July 17, 2007, when Dr. Landoff released plaintiff to return to full-duty work. Following the union hearings, on July 18, 2007, plaintiff's employment was reinstated and her time out of work was reclassified as "suspension without pay." Thus, it was futile for plaintiff to look for work from March 16, 2007 until July 17, 2007. Russell v. Lowes Product Distribution, supra.
7. As a result of her March 6, 2007 injury by accident, plaintiff was disabled and is entitled to payment by defendants of temporary total disability benefits at the rate of $437.78 per week from March 16, 2007 through July 18, 2007. N.C. Gen. Stat. § 97-29. *Page 11 
8. As a result of her injury by accident on March 6, 2007, plaintiff is entitled to all medical expenses incurred or to be incurred as a result of that compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including treatment and tests provided or recommended by Dr. Feasel and Dr. Mullen. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits for her alleged injury on January 19, 2007 (I.C. No. 705778) is hereby DENIED.
2. As a result of her injury by accident on March 6, 2007 (I.C. No. 753864), defendants shall pay plaintiff temporary total disability compensation at the rate of $437.78 per week from March 16, 2007 through July 17, 2007.
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident on March 6, 2007 (I.C. No. 753864), for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including treatment and tests provided or recommended by Dr. Feasel and Dr. Mullen.
4. Defendants shall bear the costs, including an expert witness fee of $500.00 to Dr. Castillos and $600.00 to Dr. Mullen, if not already paid.
This 13th day of April, 2009. *Page 12 
S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________________ STACI T. MEYER COMMISSIONER
 S/_______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1